IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD ENGLEHART, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:24-cv-02741-PX |
| AMERICREDIT FINANCIAL SERVICES, INC., | * | |
| | * | |
| Defendant. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant AmeriCredit Financial Services, Inc., doing business as GM Financial ("GM Financial"), Motion to Compel Arbitration or, in the Alternative, to Dismiss. ECF No. 21. Despite GM Financial's request for a hearing, ECF No. 21-1, the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, GM Financial's Motion will be granted. The Court will compel arbitration and stay the case pending completion of arbitration.

**I.      Background**

On November 12, 2016, Plaintiff Ronald Englehart ("Englehart") purchased a Chrysler 300 from an Ourisman Chrysler Jeep Dodge ("Ourisman") dealership in Alexandria, Virginia, and entered into a Retail Installment Sale Contract ("Sales Contract") with Ourisman. ECF No. 1 ¶ 28; ECF No. 22-1 at 2. Under the Sales Contract, Englehart agreed to pay the "Amount Financed" and additional finance charges to Ourisman in accordance with a specified payment schedule. ECF No. 22-1 at 2. Ourisman permissibly assigned its interest in the Sales Contract to GM Financial. *Id.* at 4. The Sales Contract is silent as to the way the payor may make loan payments, such as by check, electronic transfer, or through a third-party payment processor. *Id.*

1

On March 16, 2022, Englehart paid his monthly loan amount to GM Financial using a third-party payment processor, ACI Payments, Inc. ("ACI"). ECF No. 1 ¶ 30. ACI charged Englehart a $10.00 fee for processing the payment by phone. *Id.* ACI's practice is to send a letter or email confirming the payor's oral authorization both to transfer the loan payment to the "Receiver," here GM Financial, and to pay ACI the separate "ACI Payments, Inc. Transfer Fee" ("Transfer Fee"). ECF Nos. 22-3 & 22-4.

Consistent with this practice, ACI sent Englehart a confirmation email that states: "[t]his is your ACI Payments, Inc. Money Transfer receipt and confirms your authorization for a one-time electronic bill payment to GM Financial . . . . The Total amount will be debited from, or charged to, Your Bank Account or Card listed below." ECF No. 22-3 at 2. The confirmation email also advised Englehart that the ACI Terms and Conditions apply to the payment and provided a hyperlink to that agreement. *Id.*

The ACI Terms and Conditions state, in relevant part:

> THE ACI PAY MONEY TRANSFER SERVICE ("SERVICE") IS PROVIDED BY ACI PAYMENTS, INC., . . . AND IS SUBJECT TO THESE TERMS AND CONDITIONS AND APPLICABLE LAW. Each bill payment conducted through the Service is a money transfer performed by ACI Payments, Inc. ("Payment") on behalf of you, the sender, of that money transfer ("You" or "Your"). The Service is provided to You for non-commercial payments. We therefore generally do not accept commercial payment methods unless specifically arranged between us and the Recipient. Typically, the receiver of Your Payment ("Receiver") will post Your Payment to Your account within two (2) business days after it has been processed by Us. The amount charged to Your credit card or withdrawn from Your account (listed above as "Total Payment Amount") includes the amount of Your Payment to the Receiver and the ACI Payments, Inc. Transfer Fee. Your bank or bank card issuer may also assess fees or charges related to the Payment. ACI Payments, Inc. is not involved in the administration or collection of Your account with the Receiver, nor is ACI Payments, Inc. involved or associated with the goods and/or services provided by Receiver.

ECF No. 22-4 at 2.

The ACI Terms and Conditions also include a broadly worded arbitration provision. *Id.* at 2. It states that "any dispute arising from or related to this Payment transaction shall be resolved by final and binding arbitration," unless the payor opts out of the arbitration provision, which Englehart did not do. *Id.*; ECF No. 1 ¶¶ 28–32. The arbitration provision further states that the agreement to arbitrate is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and any award shall be subject to judicial confirmation. ECF No. 22-4 at 3. As to the relationship between ACI and the Receiver, the ACI Terms and Conditions also state that "[o]ther than [ACI's] Agreement with the Receiver to provide you access to the ACI Payments, Inc. Service," ACI is not "affiliated with the Receiver" and makes no guarantees that the Receiver will accept the loan payments. *Id.*

After Englehart arranged through ACI to pay his monthly loan amount, he evidently grew dissatisfied with having paid the Transfer Fee. Englehart now brings this suit individually and on behalf of a putative class of similarly situated payors to challenge the legality of that fee. ECF No. 1 ¶¶ 33–46. Except Englehart does not sue ACI, nor does the Complaint make any mention of ACI. Rather, the Complaint solely accuses GM Financial of violating the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., Com. Law § 14–201 *et seq.*, the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., Com. Law § 13–101 *et seq.*, and other companion state statutes. ECF No. 1 ¶¶ 47–76. The Complaint argues that because the Sales Contract does not reference the possibility of being assessed the Transfer Fee, imposing it constitutes an unfair or deceptive practice. *Id.* ¶ 27.

In response, GM Financial moves to stay this action pending arbitration pursuant to the ACI Terms and Conditions. ECF No. 21-1. GM Financial specifically argues that because the causes of action targeting the Transfer Fee are inextricably tied to the ACI Terms and Conditions,

which contain the relevant arbitration clause, Englehart should be equitably estopped from avoiding arbitration in favor of litigation.  For the reasons that follow, the Court agrees with GM Financial, will compel arbitration of Englehart's claims, and will stay the case pending arbitration.

## II.     Standard of Review

Although GM Financial styles its motion as one brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),[1] the motion rather exists "in the netherworld between a motion to dismiss and a motion for summary judgment."  *Caire v. Conifer Value Based Care*, LLC, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *see also PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012).   When the Court reviews documents outside the pleadings to determine arbitrability, it treats the motion as one brought under Rule 56.  *See Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (reasoning that denial of the motion to compel arbitration "in effect granted summary judgment" on the issue); *accord PC Const. Co.*, 871 F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings.").  Because the Court considers the Sales Contract (ECF No. 22-1), the ACI confirmation email (ECF No. 22-3), and the ACI Terms and Conditions (ECF No. 22-4), it will apply the summary judgment standard.

Summary judgment may be granted where the moving party demonstrates that no genuine issue of material fact exists, entitling the movant to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court construes the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in the

---

[1] GM Financial also moves to dismiss the claims as insufficient and for failure to join ACI as a necessary party. Because the Court grants the motion to compel arbitration, it declines to reach these issues now.

nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court relies only on facts supported in the record, not on bare assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id*. at 248–49.

### III.    Analysis

The FAA requires this Court to read arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This liberal "federal policy favoring arbitration agreements," *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002), demands that courts resolve "any uncertainty regarding the scope of arbitrable issues" in favor of arbitration. *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). Arbitration will be compelled where (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) the nonmovant refuses to arbitrate voluntarily. *Id.*

The parties do not meaningfully dispute that Englehart and ACI are bound by a valid arbitration provision, nor do they contest that Englehart has refused to arbitrate the claims challenging the Transfer Fee. Rather, the dispute centers on whether GM Financial, as a nonsignatory to the ACI Terms and Conditions, may nonetheless compel arbitration. *See Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 285 (4th Cir. 2023) (explaining questions of nonsignatory enforcement are governed by applicable state contract law).

As a threshold matter, the parties disagree about which state's law applies to whether GM Financial can invoke arbitration. GM Financial presses the Court to invoke the choice of law

provision in the ACI Terms and Conditions and apply New York law.  ECF No. 22-4 at 3 ("This agreement is governed by the laws of the State of New York . . . .").  Englehart counters that Maryland law applies because the tort-based causes of action require the Court to apply the law of the state where the injuries occurred.  ECF No. 25 at 17–18 (relying on *Dye v. Santander Consumer USA Inc.*, 2024 WL 251148 (N.D.W. Va. Jan. 23, 2024)).

The Court will apply Maryland law but for reasons different than those offered by Englehart.  As the Fourth Circuit recently explained, a nonsignatory to a contract may not invoke any of the contract terms, including its choice-of-law provision, unless the nonsignatory first demonstrates that the contract is enforceable as to it.  *See Johnson v. Cont'l Fin. Co.*, *LLC*, 131 F.4th 169, 178 (4th Cir. 2025).  To determine whether the contract extends to the nonsignatory, the Fourth Circuit directs that the Court apply choice of law principles of the forum state.  *See id.*; *see also Franklin v. Cleo AI Inc.*, No. 24-1817, 2025 WL 1540924, at *2 (4th Cir. May 30, 2025) (unpublished).  In Maryland, the Court follows the principle of lex loci contractus, applying the law of the state where the contract was formed.  *See Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490 (2002).  Englehart accepted the ACI Terms and Conditions while making his telephonic payment in Maryland.  ECF No. 1 ¶¶ 9 & 35.  Thus, the Court applies Maryland common law on the question of whether GM Financial, as a nonsignatory, can enforce the arbitration clause.

Under Maryland law, a nonsignatory may equitably enforce an arbitration clause in two circumstances: (1) when a signatory must rely on the terms of the contract containing the arbitration clause in asserting its claims, and thus seeks to benefit from the contract while avoiding its arbitration provision; or (2) when a signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

*Griggs v. Evans*, 43 A.3d 1081, 1092 (Md. Ct. Spec. App. 2012) (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002)).

Viewing the pleadings and integral documents in the light most favorable to Englehart, GM Financial may properly invoke the arbitration clause as a nonsignatory. The Complaint solely challenges the legality of the Transfer Fee governed by the ACI Terms and Conditions. Indeed, the ACI Terms and Conditions distinguish the loan "Payment" due to GM Financial as the "Receiver," from the separate payment due to ACI for the Transfer Fee, identified as the "*ACI Payments, Inc.* Transfer Fee." ECF Nos. 22-3 & 22-4 (emphasis added). By contrast, nothing in the Sales Contract specifies how or under what terms the monthly payment must be remitted, and is utterly silent as to imposition of a transfer fee. Even crediting Englehart's allegation that GM Financial was involved in assessing the Transfer Fee, GM Financial, at minimum, worked with ACI per the ACI Terms and Conditions. This interdependent and concerted action favors GM Financial's bid to invoke the arbitration provision.

The ACI Terms and Conditions also broadly require arbitration of "*any* dispute arising from or relating to this Payment transaction." ECF No. 22-4 at 2. The Terms and Conditions further make clear that the "Total Payment Amount" includes both the principal payment to GM Financial and the Transfer Fee owed to ACI. *Id.* Fairly read then, "any dispute" pertaining to the ACI transaction covers challenges to the Transfer Fee. For this reason, Englehart should not be allowed to sue GM Financial over the legality of the Transfer Fee while avoiding the very forum he originally agreed would resolve such disputes—arbitration. Although Englehart's exquisitely artful pleading pretends that neither ACI nor the Terms and Conditions exist, they do. And Englehart, having accepted those Terms and Conditions, should not disclaim the obligations he voluntarily undertook. *Cf. Griggs*, 43 A.3d at 1092 (Md. Ct. Spec. App. 2012). Because the

claims challenge the very fee governed by the ACI Terms and Conditions, which requires arbitrating the same, GM Financial can compel arbitration.

In trying to convince the Court otherwise, Englehart relies on two recent cases, *Franklin* and *Dye*. *See Franklin*, 2025 WL 1540924, at *2 (4th Cir. May 30, 2025) (unpublished); *Dye*, 2024 WL 251148, at *3 (N.D.W. Va. Jan. 23, 2024). Neither does the job.

In *Franklin,* a putative class of short-term loan customers sued lender Cleo AI, Inc. ("Cleo") for abusive lending practices. 2025 WL 1540924, at *2 (4th Cir. May 30, 2025) (unpublished). Cleo attempted to compel arbitration based not on its own agreement with its customers, but on the agreement it had with a third-party service provider, Synapse. But unlike here, the plaintiffs' claims had "nothing to do" with Synapse's services. *Id.* at *4. Accordingly, because no "significant relationship" existed between the asserted claims and "the contract in which the arbitration clause is contained," *Id.* at *5 (quoting *Griggs,* 43 A.3d at 1088), the Fourth Circuit held that Cleo could not compel arbitration. *Id.* By contrast, the Complaint challenges the propriety of the Transfer Fee as described in the ACI Terms and Conditions; and the arbitration clause in the agreement compels arbitration for "*any dispute* arising from or relating to this Payment transaction," to include the Transfer Fee. ECF No. 22-4 at 2. Given the fundamental differences in the claims and scope of the arbitration provisions, *Franklin* does not dictate a different outcome.

*Dye,* at first blush, appears more persuasive, if for no other reason than the Complaint challenged a similar "fee" that ACI had charged when processing debit-card loan payments under the identical Terms and Conditions as here. *Dye,* 2024 WL 251148, at *1. But unlike the GM Financial Sales Contract, the Chrysler Capital sales contract expressly articulated "multiple methods for Plaintiff to make her car payment," including through ACI. *Id.* Based on this, the

district court concluded that Chrysler Capital's contract essentially governed the fee associated with plaintiff's chosen payment method, and thus was not sufficiently linked to the ACI Terms and Conditions for Chrysler Capital to invoke ACI's arbitration clause. *Id.*

The Court parts company with *Dye* principally because, unlike the Chrysler sales contract, the GM Financial Sales Contract is utterly silent on how or under what terms the payor must satisfy his monthly payments. ECF No. 22-1. Englehart seizes on this silence as somehow indicating that "[n]one of the Pay-to-Pay fees are permitted" by the contract terms. ECF No. 1 ¶ 4. But no principle of contract interpretation allows this Court to construe silence on a specific subject as a *prohibition* of the same. Had the parties to the Sales Contract intended to *prohibit* certain payment methods or fees associated with such methods, they could have said as much. *See Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 454 Md. 475, 485 (2017) (explaining that under Maryland law courts must interpret a contract based on the plain and unambiguous meaning of its terms). They did not. Thus, *Dye* simply does not map with this case.

Nor is this Court persuaded by the *Dye* court's reliance on the "non-affiliation" clause in the ACI Terms and Conditions as a basis for denying arbitration. *Dye*, 2024 WL 251148, at *3. The non-affiliation clause states only that ACI does not participate in the "administration or collection of Your account with the Receiver . . . ." ECF No. 22-4 at 2. The clause, however, does not disclaim ACI's involvement in collecting the "ACI Payments Inc. Transfer Fee," as distinct from "payment to the Receiver." *Id.* ("The amount charged to Your credit card or withdrawn from Your account (listed above as 'Total Payment Amount') includes the amount of Your Payment to the Receiver *and the ACI Payments, Inc. Transfer Fee*.") (emphasis added). Thus, the non-

affiliation clause cannot be read to disaggregate the Transfer Fee from ACI's participation in imposing it.

**IV.    Conclusion**

In sum, the relevant agreements make plain that the challenged Transfer Fee is inextricably intertwined with the ACI Terms and Conditions that requires arbitration of all disputes challenging such payments.  Accordingly, even though GM Financial is not a party to the ACI Terms and Conditions, it may invoke the arbitration clause consistent with the plain text of the governing agreements.  Thus, GM Financial's Motion to Compel Arbitration (ECF No. 21) is granted in that the Court will compel arbitration of all claims in the Complaint and stay the case pending completion of such arbitration.  A separate Order follows.


Date: <u>September 10, 2025</u>                          <u>            /S/            </u>
                                                        Paula Xinis
                                                        United States District Judge